U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 NOV 28 PM 1:42

CLERK

BY /s/ LAW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOY R., )
)
   Plaintiff, )
)
v. ) Case No. 5:17-cv-66
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
   Defendant. )

## OPINION AND ORDER
### (Docs. 9, 10)

Plaintiff Joy R. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and for supplemental security income (SSI). (Doc. 1.) Currently pending is Plaintiff's motion to reverse the decision of the Commissioner (Doc. 9) and the Commissioner's motion to affirm (Doc. 10). For the reasons stated below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

### Background

Plaintiff was 54 years old on her alleged onset date of December 24, 2014. (AR 80.) Since that date, she claims she has been unable to do substantial work due to a fibula fracture in her left leg, diabetes, and high blood pressure. (*Id.*)

Plaintiff testified that she graduated from high school and technical school. (AR 58.) Plaintiff worked as an office clerk between 1987 and 2010 for various employers. (*See* AR 269.) From 1987 to 2004 and from 2007 to 2010, she was a clerk in the probation office of the Georgia

Department of Juvenile Justice for over 21 years altogether.[1] (AR 61, 233, 239, 269, 298, 318.) Plaintiff testified that the position was "primarily clerical, typing/filing." (AR 61–62.) In her Work History Report, she stated that her duties at the probation office included "typing, filing, greet general public, travel, prepare incoming-outgoing mail, purchase office supplies, monthly reports." (AR 270.) She also indicated in the report that the position required "machines, tools or equipment" and "technical knowledge or skills." (*Id.*) In a work background form, Plaintiff characterized her work at the probation office as that of a "clerk-secretary," listing the duties performed as "type, file, greet customers [and] families, attend training, organized holiday gatherings, assign probation officers, mail." (AR 318.) She testified that she left the position because the probation office "underhandedly, terminated [her] job." (AR 62.) In 2004, Plaintiff worked as a clerk in the Georgia Health Department for three months. (AR 269.) She stated in the Work History Report that her duties were "all clerical—greet public, update records, locate files, typing, telephone," and indicated that she used "machines, tools or equipment" and "technical knowledge or skills" in this position. (AR 265.) Plaintiff next held a clerk position in a hospital from 2005 to 2007. (AR 269.) She testified that the job involved "[p]redominantly just a lot of filing" and listed her duties in the Work History Report as "file records, reports, training, cross-reference on computer." (AR 275.)

Plaintiff filed her applications for SSI and DIB on January 9, 2015. (AR 80, 92.) Her claims were initially denied on or about April 3, 2015. (AR 90–91, 102–03.) She requested a

---

[1] Plaintiff reported conflicting dates of employment, although she consistently reported time ranges between 1987 and 2010. (*See* AR 269 (reporting employment from 1987 to 2004 and 2007 to 2010); AR 298 (reporting employment from November 1987 to 2007 and from 2007 to 2010); AR 318 (reporting employment began in approximately November 1987 and 2005 and ended in 2010).) However, Work History Assistant Tool results for Plaintiff indicate she stopped working for the Georgia Department of Juvenile Justice in 2004 but started again in 2007. (*See* AR 233, 239.)

2

hearing, and Administrative Law Judge (ALJ) Lisa Groeneveld-Meijer conducted a hearing on September 14, 2016. (AR 43–79.) Plaintiff appeared at the hearing without representation. Vocational Expert (VE) Edward Kolandra also testified. ALJ Groeneveld-Meijer issued an unfavorable decision on November 10, 2016 (AR 20–33.) The Appeals Council denied Plaintiff's request for review (AR 1). She appealed to this court on April 14, 2017. (Doc. 1.)

## ALJ Decision

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." *Id.* Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proving her case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

3

Employing that sequential analysis in her November 10, 2016 decision, ALJ Groeneveld-Meijer first determined Plaintiff has not engaged in substantial gainful activity since December 24, 2014. (AR 25.) At step two, the ALJ found that Plaintiff has three severe impairments: osteoarthritis of the left ankle, post left lateral malleolus fracture, and disorder of the spine. (AR 26.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or medically equals a listed impairment.

Next, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following exceptions:

> [S]he can lift and carry 10 pounds occasionally and less than 10 pounds frequently, can alternate between siting [sic] and standing in her immediate work area for up to 3 minutes every hour, cannot climb ladders, can occasionally balance but cannot stoop, crouch, kneel or crawl; cannot tolerate exposure to extreme temperatures to hazards and needs the option to take additional unscheduled breaks for up to 5 minutes during non-break hours.

(AR 28.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 31.)

At step five, the ALJ followed the Medical-Vocational Guidelines (the "Grid Rules") contained in 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ found that Plaintiff was 54 years old when she allegedly became disabled and identified Plaintiff as an individual of "advanced age." (AR 31.) The ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) The ALJ also found that Plaintiff had acquired work skills from past relevant work. (AR 31–32.) Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff's acquired work skills "are transferable to other occupations with jobs existing in significant numbers in the national economy." (AR 32.) The ALJ therefore concluded that "a finding of 'not disabled' is appropriate under the framework of

4

Medical-Vocational Rule 201.15 and Rule 201.07." (*Id.*) Consequently, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 24, 2014 through the date of the decision. (*Id.*)

## Standard of Review

Disability is defined by the Social Security Act, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "'a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d

5

1287, 1290 (8th Cir. 1994)). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### **Analysis**

On appeal, Plaintiff claims that substantial evidence does not support the ALJ's conclusion that she is not disabled because she has transferrable skills. (Doc. 9 at 3.) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and free of legal error. (Doc. 10 at 1.)

The Regulations provide special rules for determining whether a person of advanced age is "disabled" under the Act. 20 C.F.R. §§ 404.1563, 404.1568(d)(4), 416.963, 416.968(d)(4). Sections 404.1568(d)(4) and 416.968(d)(4) state:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work . . . that you can do despite your impairment(s).

When a claimant of advanced age is limited to sedentary work, the following rule also applies:

> [W]e will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

§§ 404.1568(d)(4), 416.968(d)(4).

Plaintiff turned 55 on January 2, 2015, just seven days following the alleged onset date of December 24, 2014 (AR 80), and therefore constitutes a "person of advanced age." *See* §§ 404.1563(b), 416.963(b) ("We will not apply the age categories mechanically in a borderline situation," i.e. where claimant is "within a few days to a few months of reaching an older age category."). Moreover, the ALJ found that Plaintiff has severe impairments that limit her to sedentary work. (AR 26.) Accordingly, the ALJ must make three findings in order to conclude

6

that Plaintiff was not disabled: (1) the Plaintiff acquired job skills; (2) these skills transfer to other skilled or semi-skilled work consistent with her RFC; and (3) these other jobs are so similar to her past relevant work that she "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Biernacki v. Colvin*, No. 15-CV-331-FPG, 2016 WL 4925850, at *3 (W.D.N.Y. Sept. 16, 2016) (quoting § 404.1568(d)(4)).

In her decision, the ALJ found that Plaintiff had acquired transferrable work skills from her past relevant work as an office clerk that could transfer to other occupations in the national economy. (*See* AR 31–32.) The ALJ relied on the VE's testimony that this position "was semi-skilled with a specific vocational preparation (SVP) code of 3 and required such skills as knowledge of office machinery, taking telephone calls and dealing with the public." (AR 32; *see also* AR 67–68.) The ALJ then found that these skills could be transferred to other semi-skilled occupations, citing the VE's testimony that Plaintiff could perform the work of a telephone operator, telemarketer, or receptionist using these acquired skills. (AR 32; *see also* AR 68–69.)

Plaintiff challenges the ALJ's determination on three grounds. First, she asserts that the "dealing with the public" is not a skill. (Doc. 9 at 7). Second, Plaintiff contends that the occupation of receptionist requires a higher level of skill than her past relevant work as an office clerk. (*Id.*) Finally, she claims that the VE's testimony—on which the ALJ relied—failed to consider the proper factors under § 404.1568(d)(4) and § 416.968(d)(4) when evaluating Plaintiff's ability to adjust to other work. (*Id.* at 8.) For the following reasons, the court finds that Plaintiff's arguments are without merit.

### I. Plaintiff's Transferrable Work Skills

The VE testified that working as an office clerk requires "knowledge of some . . . office machinery[,] . . . taking phone calls and dealing with the general public." (AR 67–68.) Plaintiff

7

argues that "dealing with the public" is a general capacity, not a job skill. (Doc. 9 at 8.) While the term "skill" is not defined in the regulations, Social Security Ruling 82-41 defines a skill as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level . . . It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

1982 WL 31389, at *2 (Jan. 1, 1982) ("SSR 82-41"). "[A]ptitudes or abilities," which the ruling refers to as "worker traits," are not necessarily acquired work skills because "[s]kills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs." *Id.* at *3. Therefore, the Second Circuit has held that "abilities, when not linked to any particular tasks, are merely traits or aptitudes, not job skills." *Draegert v. Barnhart*, 311 F.3d 468, 476 (2d Cir. 2002) (citing SSR 82-41 at *3). Abilities may amount to skills, however, when "used in connection with a work activity" because transferrable skills arise from "the acquired capacity to perform the work activities with facility (rather than the traits themselves)." SSR 82-41 at *3.

Although the ability to deal with the public may be classified as a trait, substantial evidence supports the ALJ's finding that this ability constitutes a skill in Plaintiff's case. Taken out of any practical context, a generic aptitude for dealing with public would not constitute a transferrable job skill. *Cf. Draegert*, 311 F.3d at 476 ("ability to use reason and judgment in dealing with all kinds of people" is not a transferrable skill absent connections to specific work activities); *Gittens v. Astrue*, No. 07 Civ. 1397, 2008 U.S. Dist. LEXIS 48020, *21 (S.D.N.Y. June 23, 2008). ("ability to communicate with others" is not a transferrable skill). Here, however, the record shows that Plaintiff used this ability in connection with her work as an office clerk. As a clerk in the probation office of the Georgia Department of Juvenile Justice, Plaintiff reported that her responsibilities included "greet the general public" (AR 270) and "greet customers [and]

8

families" (AR 318). Similarly, she indicated that working as a clerk at the Georgia Health Department required her to "greet [the] public." (AR 265.)

Moreover, the VE discussed the relevance of dealing with the public in the context of specific work activities when testifying about other occupations Plaintiff could perform. SSR 82-41 at *3. The VE testified that the occupations of telemarketer, telephone operator, and receptionist respectively involve describing products and services to individuals, "answering a phone and providing information," and "greeting people and . . . directing them or giving them information." (AR 68.) Because communicating information to people and receiving office visitors are specific work activities that require dealing with the public, the VE's testimony contemplates more than a generic social or communication ability. Rather, the VE indicated that Plaintiff has the capacity to competently perform work activities that require interacting with potential customers, callers, or office visitors based on her experience dealing with the public as an office clerk. *Cf. Hy v. Astrue*, No. 11-CV-1075S, 2013 WL 1337264, at *3–4 (W.D.N.Y. Mar. 29, 2013) (finding VE's discussion of Plaintiff's "understanding of the time required to perform tasks" in a particular industry "contemplates more than a generic ability to manage one's time" by referencing Plaintiff's "acquired area of expertise" in that industry).

Even if the ability to deal with the public was irrelevant to the ALJ's disability determination, such an error would be harmless because the VE cited two additional work skills that may be transferred to the occupations of telephone operator, telemarketer, and receptionist. *See Gittens*, 2008 U.S. Dist. LEXIS 48020, at *21–22 (finding harmless error where VE improperly identified "the ability to communicate with others" as a skill but properly cited two other skills). Plaintiff concedes that "knowledge of office machinery" and familiarity with "the process of taking phone calls"— both of which are inherently connected to specific work

9

activities—constitute job skills. (Doc. 9 at 8.) Accordingly, the VE's testimony supports the ALJ's finding that Plaintiff acquired work skills from her past relevant work as an office clerk.

**II.      Other Semi-Skilled Work**

Plaintiff argues that the ALJ improperly determined that her skills could transfer to the occupation of receptionist, which she contends requires more skill than an office clerk. As the Commissioner has noted, "an individual cannot transfer skills . . . to work involving a greater level of skill than the work from which the individual acquired those skills." Social Security Ruling 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("SSR 00-4P") (citing SSR 82-41). Pursuant to this rule, Plaintiff maintains that any skills acquired while working as an office clerk, which has an SVP of 3, cannot transfer to the occupation of receptionist, which has a higher SVP of 4. (Doc. 9 at 7.)

Plaintiff incorrectly conflates SVP codes with skill level classifications. As the title "Specific Vocational Preparation" indicates, SVP codes refer to the amount of time it takes to learn a job. SVP codes are used to evaluate the skill level of occupations. *See* SSR 00-4P. But the relevant skill level classification in disability determinations is "skilled, semi-skilled, or unskilled." 20 C.F.R. § 404.1568. Because "semi-skilled work corresponds to an SVP of 3–4;" SSR 00-4P at *3; the VE correctly determined that the skill level of a receptionist is comparable to that of an office clerk.

Even if the ALJ erred regarding Plaintiffs ability to perform the work of a receptionist, such an error would be harmless because the VE's testimony identified two other jobs compatible with Plaintiff's acquired skills. *See Blake v. Colvin*, No. 2:14-CV-52-JMC, 2015 WL 3454736, at *8 (D. Vt. May 29, 2015) ("[A]ssuming the ALJ erred regarding [one particular] job, the error is harmless because the VE testified to two other jobs existing in significant numbers in the national economy that [plaintiff] could perform."). To satisfy the burden of proof at step five,

"[t]he Commissioner need show only one job existing in the national economy that [Plaintiff] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). Therefore, a finding of not disabled would be appropriate even if Plaintiff could only perform one of the three jobs which the ALJ determined existed in significant numbers in the national economy. Here, two of the three occupations identified by the VE—telemarketer and telephone operator—are semi-skilled jobs with an SVP of 3 (AR 68), the same code assigned to Plaintiff's past work as an office clerk (AR 66). Plaintiff does not dispute her ability to perform either occupation. Therefore, substantial evidence supports the ALJ's finding that Plaintiff's acquired skills can transfer to other semi-skilled work consistent with her RFC.

### III. Plaintiff's Ability to Adjust to Other Work

Plaintiff argues that substantial evidence in the record does not show that she can perform other work "with very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. §§ 404.1568(d)(4); 416.968(d)(4). At the hearing, the ALJ asked the VE about the ways in which someone with Plaintiff's employment history would need to adjust "to procedures, the industry, the work itself" of a telemarketer, telephone operator, or receptionist. (AR 68.) The VE responded:

> I don't think there would be much adjustment at all. In the area of telemarketer, the person would have to understand what type of products or services that they are describing when they contact individuals. But a telephone operator is basically answering a phone and providing information. The receptionist is greeting people and, you know, directing them or giving information. So I don't think there'd be much of a learning curve at all.

(AR 68–69.)

Plaintiff maintains that the VE's analysis, on which the ALJ relied, "confuses the ease with which some semi-skilled jobs can be learned with closeness of fit between semi-skilled

11

jobs." (Doc. 9 at 8.) However, the VE specifically emphasized that the occupations of telemarketer, telephone operator, and receptionist require "contact[ing] individuals" over the phone, "answering a phone and providing information," and "greeting people." (AR 68.) As explained in SSR 82-41:

> [W]here job skills have universal applicability across industry lines, e.g., clerical . . . types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

SSR 82-41 at * 6. By highlighting work activities that involve "knowledge of office equipment, talking on the phone and dealing with the public" (AR 32), the VE's testimony contemplates Plaintiff's capacity to carry out the duties of other clerical positions using skills acquired while performing comparable activities as an office clerk. Accordingly, substantial evidence supports the conclusion that Plaintiff would need "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or industry" to become a telemarketer, telephone operator, or receptionist. 20 C.F.R. §§ 404.1568(d)(4); 416.968(d)(4).

## Conclusion

Plaintiff's motion to reverse (Doc. 9) is DENIED, the Commissioner's motion to affirm (Doc. 11) is GRANTED, and the decision of the Commissioner is AFFIRMED.

Dated at Rutland, in the District of Vermont, this 28th day of November, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court

12